**Angel Luis Robles MELENDEZ, et al., Plaintiffs,**

v.

**MERK AND COMPANY, INC., et al., Defendants.**

**No. Civ. 90–2218(DRD).**

United States District Court, D. Puerto Rico.

Jan. 29, 1999.

Ariel O. Caro–Perez, San Juan, PR, Eric M. Quetglas–Jordan, San Juan, PR, for Plaintiffs.

Jose L. Verdiales–Morales, McConnell Valdes, San Juan, PR, Rafael J. Baragano–Amadeo, Yauco, PR, Jose E. Gonzalez–Borgos, Fiddler, Gonzalez & Rodriguez, San Juan, PR, Jose A. Fernandez–Paoli, Santurce, PR, Luis Sanchez–Betances, Sanchez Betances, Sanchez Betances & Sifre, San Juan, PR, Luis A. Melendez–Albizu, Bobonis, Bobonis & Rodriguez Poventud, San Juan, PR, Steven C. Lausell–Stewart, Jimenez, Graffam & Lausell, San Juan, PR, for Defendants.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the court is Plaintiffs, Angel Robles Colón, Maribel Robles Colón, Sonia Noemí Robles Colón, Sonia Colón Pou and Angel Luis Robles Meléndez' objections to the Honorable Magistrate Judge's Report and Recommendation. (Docket No. 127). Also before the court is the Response by Defendant De Dietrich (USA) in opposition to said objection. (Docket No. 131).[1]

The court referred all motions to Magistrate Judge Jesus A. Castellanos for a report and recommendation (Docket No. 126), pursuant to 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b), and Rule 503, Local Rules, District of Puerto Rico.

## I. STANDARD FOR REVIEWING A MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

A district court may, on its own motion, refer a pending matter to a United States Magistrate Judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); Fed.R.Civ.P. 72(b); Rule 503, Local Rules, District of Puerto Rico. *See Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). Of course, the plaintiff may contest the magistrate's report and recommendation; 28 U.S.C. § 636(b)(1) (1993), provides in pertinent part:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

This statutory provision is echoed by Fed.R.Civ.P. 72(b) and Local Rule 510.2. In addition, Local Rule 510.2(A) states: "Any objections to the Magistrate Judge's proposed findings, recommendation, or report must be filed with the Clerk of the Court within ten (10) days after being served with [a] copy thereof. *Failure to file objections within the specified time waives the right to appeal the District Court's order.*" (Emphasis added.) Rules such as this one have been approved by the U.S. Supreme Court. *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106

---

1. The Court declined to consider a document entitled "Reply to Response", **(Docket No. 33),** filed by Plaintiff because first a reply is a discretionary matter, Local Rule 311.07 and secondly the document contained additional not authorized untimely objections to the Report and Recommendation. Local 510.2.

S.Ct. 899, 88 L.Ed.2d 933 (1986) (holding that "a court of appeals may adopt a rule conditioning appeal, when taken from a district court judgment that adopts a magistrate's report and recommendation, upon the filing of objections with the district court identifying those issues on which further review is desired").

■ Pursuant to this rule, "[a]bsent objection by the plaintiffs, the district court had a right to assume that plaintiffs agreed to the magistrate's recommendation." *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir.), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992). *See also Henley Drilling Co. v. McGee,* 36 F.3d 143, 150– 151 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993) (stating that "objection to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.,* 848 F.2d 271, 275 (1st Cir.1988); *Borden v. Secretary of H.H.S.,* 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised"). *See generally United States v. Valencia-Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980).[2]

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Angel Luis Robles Meléndez (hereinafter "Robles Meléndez"), while working as an employee of and at Merk, Sharp & Dohme, was injured when a tank installed therein exploded, killing three other employees and injuring eight additional employees.

The cause of action filed on September 14, 1990 originates from the rupture of a tank at Merk's plant in Barceloneta on June 12, 1986. The tank was purchased by Merk from R. Gelb & Sons, Inc., (hereinafter referred to as "Gelb") predecessor of the De Dietrich. In accordance with the purchase order of the tank requested by Merck, Gelb participated in the design of the tank it is further averred that fifteen years prior to the explosion. The tank is a permanent fixture of one of Merk's buildings, an integral operational fixture of the plant since 1972.

Plaintiffs claim damages against various codefendants, among them, De Dietrich U.S.A., Inc. (hereinafter "De Dietrich") and Daniel Construction's (hereinafter "Daniel"). Against De Dietrich, plaintiff alleges that the tank was sold with inherent defects and that defendants incurred in negligence in providing proper instruction as to safe use, operation and maintenance of the tank. As to Daniel Construction, plaintiffs claim wrongful construction of the system and installation of the tank without taking into consideration the defects of design of the tank; it is further averred that Daniels also failed to detect and correct the deficiencies of the tank.

Motions for summary judgement were submitted by codefendants De Dietrich and Daniel (Dockets Nos. 58, 65), to which plaintiffs and codefendant Carbone, filed oppositions (Dockets Nos. 100, 113). Codefendant Carbone, a division of Carbone– Lorraine Inds., Corp., is allegedly liable since it manufactured and sold a defective carbon disk which plaintiffs maintain ruptured interfering with the proper function of a safety valve that could have prevented the accident. Carbone filed a cross-claim against both defendants under the theory that if it was liable to plaintiffs, the defendants would be liable to Carbone under

---

**2.** See further discussion on this matter at part IV(A) of this opinion p. 152.

Article 1802 and under Article 1098 of the Code, P.R.Laws Ann. tit 31 § 5141, 3109.

Daniel submits that the work it performed at Merck facilities was completed and delivered in 1972 and that the ten (10) year jurisdictional period (plazo decenal) for actions under Article 1483, P.R.Laws Ann. 4124 against architects and contractors had long expired. As such, Daniel maintains, the cause of action is time barred.

As to De Dietrich, in its opposition, plaintiffs submit that the action falls outside a § 1483 claim and is a product liability claim under P.R.Laws Ann. Tit. 31 § 5141 and a claim of damages for fault or negligence. Pursuant to these premises, the claims were brought within one year provided for by the statute of limitations.

On April 7, 1992, De Dietrich filed the Motion for Summary Judgement, (Docket No. 58) pursuant to the Fed.R.Civ.P. 56 alleging that the claims were time barred because the ten (10) year time period for commencing an action under the "plazo decenal" of Article 1483 of the P.R.Civil Code (P.R.Laws Ann. tit 31 § 4124) had elapsed. The Magistrate Judge recommended dismissal of all claims against De Dietrich based on the cases of *Wang Laboratories v. F & R Construction Corp.,* 94 J.T.S. 90 (1994); *Zayas v. Levitt and Sons,* 132 D.P.R. 101, 1992 WL 754832 (1992), holding that the only cause of action available to plaintiff must be based on § 1483 of the P.R.Civil Code.[3] The Magistrate found that plaintiff as third party is covered by Article 1483, *Wang Laboratories* 94 J.T.S. 90, and are therefore, covered by the "plazo decenal" theory. *See also In re San Juan Dupont,* 687 F.Supp. at 727; *Oliveras-Salas,* 884 F.2d 1532, 1535–36 (1st Cir.1989). The Magistrate further recommended dismissal of the similar claims against Daniels with the exception of the claims of negligence based on the

maintenance and supervision of the tank. (Docket No. 126).

## III. PLAINTIFFS' OBJECTION TO THE REPORT AND RECOMMENDATION

Plaintiffs presented timely objections to the Honorable Magistrate Judge Report and Recommendation (Docket No. 127). First, plaintiffs argue that the Magistrate should have found that the claim against Dietrich for negligent maintenance of the tank is not time barred. Second, plaintiffs argue that Dietrich cannot be considered an "architect" under Article 1483. Third, plaintiffs allege that the period of Article 1483 is not applicable to Dietrich. Fourth, plaintiff insists that the complaint against Dietrich states, among others, a product liability claim which arises under Article 1802 of the Puerto Rico Civil Code, P.R.Laws Ann. Tit. 31 § 5141. Plaintiffs also argue that the statute of limitation within which an action may be filed under article 1802 is that stated in Article 1868 of the Puerto Rico Civil Code, P.R.Laws Ann. Tit. 31 § 5298, (stating that actions for obligations arising from the fault or negligence under Article 1802 prescribe in one year from the time the aggrieved person had knowledge thereof).

In the alternative, as to claims against De Dietrich plaintiffs aver that the interpretative case law of the Supreme Court of the Commonwealth of Puerto Rico stands for the principle that "the prescriptive period for filing of action arising under Article 1809 of the Puerto Rico Civil Code, P.R.Laws Ann. tit. 31 § 5148 is the one year provided for in Article 1868, P.R.Laws Ann. tit 31 § 5198. Thus, since the Complaint was filed within the term provided for in Article 1868, plaintiffs argue, it must be concluded that said causes of action are not time barred."

---

**3.** See also *Oliveras–Salas v. P.R. Highway Authority,* 884 F.2d 1532, 1535–36 (1st Cir. 1989); *Ramos Lozada v. Oriental Rattan,* 92 J.T.S. 74 (1992); and *Felix Davis v. Vieques Air Link,* 892 F.2d 1122, 1123–1126 (1st Cir. 1990).

## IV. PRELIMINARY PROCEDURAL MATTERS

### A. New allegations not presented to the Magistrate Judge

The Report and Recommendation the Magistrate Judge did not make any conclusion as to a cause of action against De Dietrich for negligent maintenance and manipulation of the tank. The court has not been able to identify any cause of action as to De Dietrich for maintenance. Further, and most critical, no facts were proffered by plaintiff under Local Rule 311.12 accompanying the Motion for Summary Judgement.

█ Plaintiffs allegation that De Dietrich was involved in the maintenance of the tank, cannot be presented to the District Judge performing the de novo review if the claim was not submitted to the Magistrate Judge. *Borden*, 836 F.2d at 6 (1st Cir.1987) *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985, 990–991 (1st Cir. 1988), *Henley Drilling Co. v. McGee*, 36 F.3d 143 (1st Cir.1994). ("we hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the Magistrate ... it would be fundamentally unfair ... to permit a litigant to wait to see which way the wind was blowing and—having received an unfavorable recommendation—shift gears before the district judge." *Paterson-Leitch*, 840 F.2d at 990–991.).[4] Thus this court will not consider arguments that were not presented to the Honorable Magistrate Judge Castellanos.

Further in the complaint filed by plaintiffs only two allegations, stated in paragraphs 36 and 44(e), relate to the alleged improper maintenance of the tank. Said allegations were averred against codefendant Merck and not De Dietrich. These allegations were directed towards Merck for failing to provide or allow maintenance of the tank for the two year period preceding the explosion. De Dietrich did provide maintenance to the tank, from 1975–1976.

### B. Local Rule 311.12

█ There is an additional critical reason to deny plaintiffs' claim against De Dietrich as to maintenance of the tank: lack of compliance with local rules. The court explains. The instant case is now being examined under the Summary Judgement Standard. The function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary" *Vega–Rodriguez*, 110 F.3d at 178 (1st Cir.1997) (citing *Wynne v. Tufts University School of Medicine*, 976 F.2d 791, 794 (1st Cir.1992)). A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ..." Fed.R.Civ.P. 56(c). "To defeat a motion for summary judgment, the non-moving party must demonstrate the existence of a trial worthy issue as to some material fact." *Cortes–Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 187 (1st Cir.1997). "In applying this formulation, a fact is 'material' if it potentially affects the outcome of the case", *Vega-Rodriguez*, 110 F.3d at 178, and "genuine" "if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes-Irizarry*, 111 F.3d at 187. "Speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant in the face of a properly documented summary judgment motion. Moreover, even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and

---

4. The *Paterson Leitch* court further stated that "The rule does not permit a litigant to present new initiatives to a District Judge". 840 F.2d at 990.

unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.* 95 F.3d 86, 95 (1st Cir.1996) (citations omitted).

Further, pursuant to Local Rule 311.12, the proponent of a summary judgment motion shall serve and file "annexed to the motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried and the basis of such contention as to each material fact, *properly supported by specific reference to the record.*" Local Rule 311.12. (emphasis ours). These facts are deemed admitted unless the nonmoving party files a similarly "separate, short, and concise statement of the material facts as to which it contends that there exists a genuine issue to be tried, *properly supported by specific reference to the record.*" *Id.*

A fellow district Judge, recently underscored the importance of this rule in "lay[ing] out the material facts in dispute clearly for a district court that is swamped with an overwhelming number of civil and criminal dispositive motions." *Dominguez v. Eli Lilly and Co.,* 958 F.Supp. 721, 727 (D.P.R.1997). "Without such a rule, the Court would have to search through the record, with or without the assistance of counsel, for lurking evidence of a genuine issue of material fact. Local Rule 311.12 prevents 'the recurrent problem of ferreting through the record and the specter of district judges being unfairly sandbagged by unadvertised factual issues.'" *Id.* (quoting *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 930–31 (1st Cir.1983) (internal citations omitted)). Moreover, "[w]ithout specific references to the Record, the list of uncontested and contested facts does not serve its purpose. The Court would have to continue to ferret through the record, read all the answers to the interrogatories, study all the attached documents, and carefully scrutinize all the depositions for lurking genuine issues of material fact." *Id.* Accordingly, failure to comply with the "anti-ferreting rule" can have severe consequences indeed, as

"*Stepanischen* warns ... [,] the failure to make specific references to the Record 'would, where appropriate, be grounds for judgment against the party.'" *Dominguez,* 958 F.Supp. at 727.

In the instant case plaintiff simply did not provide facts pointing to liability by De Dietrich as to maintenance. The court cannot incur in an endless expedition "ferreting through the record" searching for facts favoring plaintiff looking for the proverbial needle in a haystack.

## V. SUBSTANTIVE ISSUES

### A. The "Plazo Decenal" and a claim under Section 1983 as an exclusive cause of action

■ Finally, even assuming that plaintiffs have adequately pleaded a cause of action against it for lack of proper maintenance, such a claim is barred by the Plazo Decenal.

The P.R. Supreme Court has already determined that claims of negligent repair and maintenance are "construction defects" subject to the Plazo Decenal of Article 1483. *Acevedo Hernandez v. Corporacion De Renovacion Urbana Y Vivienda De Puerto Rico,* 110 D.P.R. 655, 660–662 (1981). The *Acevedo Hernandez* court determined that "the civil law doctrine and the jurisprudence recognized generally that repairs equal a construction when the repairs affect an essential element of a construction job." Id. at 660 (our translation). As admitted by plaintiffs, these repairs and maintenance jobs were conducted in 1975–1976, more that 10 years prior to the filing of the complaint. Therefore, plaintiffs' alleged claim for improper maintenance, even if properly pleaded, would have to be dismissed as time barred.

■ Moreover, even if the repair and maintenance provided by De Dietrich was not considered a "construction defect", plaintiffs' allegations of maintenance would still have to dismissed as time barred. Plaintiffs allege that the present claim is

only one of simple product liability. This presents the court with the issue of whether plaintiffs can assert the tort and product liability claims at all, on facts upon which a cause of action could be had also under Articles 1483 and/or 1809 of the Civil Code (P.R.Laws Ann. Tit. § 4124 and § 5148). (subject to the "Plazo Decenal" caducity period.) The court concludes that pursuant to Puerto Rican law potential claims under 1483 cannot to be considered and disguised as damages and/or product liability claims under Article 1802. The court explains.

The liability of architects, builders, contractors, and generally of all professionals of construction derive from Article 1483 of the Civil Code, P.R.Laws Ann. 4124. *See Santiago Nieves v. Administracion De Compensaciones Por Accidentes De Automoviles,* 119 D.P.R. 711, 719 (1987); *Rosello Cruz v. Garcia,* 116 D.P.R. 511, 516 (1985); *Fantauzzi De Lopez v. Pleasant Homes, Inc.,* 113 D.P.R. 132, 137 (1982); *Carreras v. Gonzalez Santos Y Otros,* 111 D.P.R. 819, 822 (1981); *Acevedo Hernandez,* 111 D.P.R. at 638 (1981); *Maldonado Perez v. Las Vegas Development Co.,* 111 D.P.R. 573 (1987).

Articles 1807 and 1808(1) of the Puerto Rico, P.R.Laws Ann. Tit. 31 § 5146 and § 5147, in turn provide the legal basis for the liability of owners and proprietors towards third parties[5] related to the "collapse" of "buildings" and the "explosion of machines". Liability under Article 1807 derives from "collapse of a building" whereas the liability from Article 1808 emanates from the "explosion of machines". Finally, Article 1809, P.R.Laws Ann. Tit. 31 § 5148, provides the legal basis for liability of an architect or a constructor towards third parties, such as the plaintiffs, for damages caused by the "collapse" of "buildings" or the "explosion of machines" as provided in articles 1807 and 1808.

Liability under Article 1809 is expressly subject to the legal period which the First Circuit Court has acknowledged to be the Plazo Decenal provided in Article 1483. *See Oliveras Salas,* 884 F.2d. at 1536. (circuit court accepting interpretation of District Court based on learned Commentators, "[C]arrying significant weight in Puerto Rico" id at 1536 and on dicta of the Supreme Court in *Powerlite of Puerto Rico v. CRUV,* 115 D.P.R. 654 (1984)); See also *In re San Juan Dupont Plaza Fire Litigation,* 687 F.Supp. at 727–730; *Felix Davis v. Vieques Air Link,* 892 F.2d 1122, 1125–26 (1st Cir.1990) following the reasoning in *Oliveras Salas,* 884 F.2d. at 1536. Thus, plaintiffs claim, which specifically derives from the "explosion of a machine" and/or the "collapse of a building" are covered under Article 1483 and/or 1809 as said terms are amply defined in the jurisprudence.

The issue then is whether plaintiffs could assert the claim as a tort and product liability claim notwithstanding the claim being covered under article 1483 and under article 1809. The Puerto Rico Supreme Court has already answered this issue in the negative.[6] In *Zayas,* 132 D.P.R. 101 the Puerto Rico Supreme Court expressly declined to allow a separate cause of action for breach of contract asserted along with claim arising from 1483. The *Zayas* Court expressly held that Article 1483 is the provision of law which governs all claims related to alleged construction defects which cause the collapse of a building.

---

5. Third parties are covered under the "plazo decenal" theory *In re San Juan Dupont Plaza,* 687 F.Supp. 716, 727–733 (D.P.R.1988); *Oliveras–Salas,* 884 F.2d 1532; *Wang Laboratories v. F & R Contruction Corp,* 94 J.T.S. 164.

6. Puerto Rico District Judges Laffitte, Acosta and Fusté had prior thereto correctly predicted the decision of the Puerto Rico Supreme Court on this matter. See *Oliveras Salas,* 884 F.2d at 1535–1536; *In re San Juan Dupont Plaza,* 687 F.Supp. at 727–730; *Vieques Air Link,* 892 F.2d at 1125–1126.

In *Zayas*, the court acknowledged the need for uniformity in this area of the law, the statutory framework created by Article 1483, 1807, 1808 and 1809 of the Civil Code. The court held that plaintiffs can only assert a claim pursuant to Article 1483 and 1809 under the "plazo único" theory.[7] Under the *Zayas* doctrine, plaintiffs complaint is time barred by the expiration of the Plazo Decenal.

First Circuit Court, as well as the district court opinions have, in the past, rejected imaginative attempts by plaintiffs to circumvent the "responsabilidad decenal" or split action into various other types of tort and contract claims. *See Oliveras Salas v. P.R. Highway Authority*, 884 F.2d at 1536; *Davis v. Vieques Air Link*, 892 F.2d. at 1126 (1st Cir.1990); *In re San Juan Dupont Plaza Hotel Fire Litigation*, 687 F.Supp. at 727–730, *Acevedo Maldonado v. P.P.G. Industries Inc.*, 514 F.2d 614, 616 (1st Cir.1975).

More importantly, however, the P.R. Supreme Court specifically determined in *Zayas*, 132 D.P.R. at 108–110 that when a "Plazo Decenal" claim was applicable, no other claim could be adduced which could subvert the applicability of the ten year exposure period.

Hence notwithstanding plaintiff's gallant effort, the instant claim is covered exclusively by the "doctrina del plazo único" of the "plazo decenal", ie., the ten year period under article 1483.[8]

## B. De Dietrich is an architect under the Plazo Decenal

In the objections, plaintiffs further aver that De Dietrich does not qualify as an "architect" because according to plaintiffs, only architects who direct work on site qualify as such. The court differs and explains.

Article 1483 of the Code, P.R.Laws Ann. § 4124, states that the Plazo Decenal applies to "architects who may have directed the work if the collapse is due to defects in the ground or in the direction". Notwithstanding, the Puerto Rico Supreme Court has consistently construed this statutory provision liberally beyond its mere language. According to the Puerto Rico Supreme Court "the 'responsabilidad decenal' established [in article 1483] may be imposed on a constructor, an architect or on [all] those professionals of construction that may have caused the collapse of the building". *Constructora Bauza, Inc. v. Garcia Lopez*, 91 J.T.S. 99, at p. 9077 (translation ours); *Geigel v. Mariani*, 85 D.P.R. 46 (1962). As part of the rule of law of the "responsablidad decenal" there is an *iuris tantum* presumption of negligence as to all participants (professionals of construction) in the design and construction of a work site. *González v. Santos Cruz*, 89 J.T.S. 67, at p. 7050 (1989) (non professionals are exempt from the "plazo decenal"), *Carreras v. Gonzalez Santos*, 111 D.P.R. 819, 822 (1981); *Acevedo Hernandez v. Vinas Sorba*, 111 D.P.R. 633 (1981).

Based on the broad construction of the term "architect", the Puerto Rico Supreme Court has established that the architect which designs a building as well as the architect who supervises the construction are both liable for construction under arti-

---

7. The doctrine of "plazo único" states that any claim for damages pursuant to article 1483 of the Civil Code (P.R.Laws Ann. tit 31) must be exercised within the "one term" covering both the prescription period and the substantive guarantee period set under the legal theory. The Puerto Rico Supreme Court has consistently rejected that the term be composed of both the guarantee period (ten years) plus an additional term of prescription. It is one term, "plazo único" covering both the substantive period as well as the prescrip-

tive period; the term is ten (10) years. *Gonzalez v. Agostini*, 79 D.P.R. 510 (1956). See *Zayas*, 132 D.P.R. at 109 and cases cited therein.

8. The "plazo decenal [cause of action] is one of guarantee but [subject to] *caducidad* ", (not subject to extra judicial interruption), *Rivera v. Las Vegas Development*, 107 D.P.R. 384, 388 (1978); *Zayas*, 132 D.P.R. at 109.

cle 1483. *Rosello Cruz*, 116 D.P.R. at 518.[9] Plaintiffs admitted that De Dietrich is the successor in interest of the entity that designed the tank. Therefore De Dietrich is protected by the expiration of the Plazo Decenal as a "professional of construction".

### C. The Tank is a "Building"

■ The tank object of the complaint is a "building" under article 1483 and 1807 of the Puerto Rico Civil Code.

The Puerto Rico Supreme Court has prior hereto acknowledged that "In the Spanish law, commentators tend to give a broad interpretation to the term [building]." *Federal Ins. Co. v. Dresser Ind., Inc.*, 111 D.P.R, 96, 100–101 (1981) (official translation). The Supreme Court also determined that the term "building" encompasses mechanical devices and apparatuses, such as elevators, pipes and other analogous installations, which are permanently affixed to the structure so as to be incorporated into it.

The Supreme Court's ruling in *Dresser* was further strengthened in '*Fantauzzi*, 113 D.P.R. 132. In *Fantauzzi*, the Puerto Rico Supreme Court ruled that the manufacture or prefabricated parts of a structure fell within the definition of "building", and that both the manufacturer of the prefab parts, as well as the installer of the different parts, could be found liable under article 1483.[10]

In the instant case, the tank was a 3,000 gallon prefabricated device jacketed glass-lined steel vessel that was permanently affixed to the floors and walls of the modular building at the M.S.D.Q. plant when installed by Daniel construction Company. As noted by the jurisprudence in *Fantauzzi*, 113 D.P.R. at 135, the critical element is

that the affixed device be intended to last at least ten (10) years in order that its potential construction defects be actionable. Further, the installation must be "an important part of the work and/ or permanently attached to the building by the contractor" *Vieques Air Link*, 892 F.2d at 1126. Only those devices which are intended to have less than a ten (10) year life span may be excluded from the definition of "building". *Maldonado Perez*, 111 D.P.R. at 577. Plaintiffs have acknowledged that the life span of the tank was for more than ten (10) years. Hence, since the tank was intended to have a life span of more than ten (10) years, the tank must be considered a "building".

### D. The Claim is substantively time barred

The statute of limitation applicable for claims under article 1483 and 1809 of the Civil Code is the Plazo Decenal's ten year caducity period. *Rivera v. Las Vegas Development*, 107 D.P.R. at 388; *Zayas*, 132 D.P.R. at 108–109. The First Circuit Court and the District Court have already determined that the limitation period applicable to actions under article 1483 is the Plazo Decenal. *See Oliveras–Salas*, 884 F.2d at 1536; *Vieques Air Link*, 892 F.2d at 1126; *In re San Juan Dupont Plaza*, 687 F.Supp. at 727–730. Moreover, Article 1483 specifically states that the ten (10) year exposure period applies to actions for damages filed under said provision. Hence, plaintiff's arguments attempting to induce the court to apply other statutory periods are inmeritorious.

■ The Puerto Rico Supreme Court, the First Circuit and this District Court have followed the "Plazo Único" theory, holding that all defects must manifest themselves, and a plaintiff's corresponding

---

**9.** Similarly the District Court of Puerto Rico has applied the term "plazo decenal" to a defendant, officer, shareholder, who personally supervised the construction. *Martinez v. Calzadilla*, 756 F.Supp. 78 (D.P.R.1991).

**10.** The First Circuit Court of Appeals has determined that gas tanks are permanent fix-

tures at an airport construction and therefore within the definition of a building covered under article 1483 of the code; *Vieques Air Link*, 892 F.2d at 1125–26 (no distinction found in defective installation versus defective instruction).

complaint must be filed, within ten (10) years following the termination of the construction. *Medina v. International Basic Economy Corp.*, 121 D.P.R. 890, 891 (1988); *Rivera v. Las Vegas Development Co., Inc.*, 107 D.P.R. 384, 390 (1978); *Geigel v. Mariani*, 85 D.P.R. at 50; *Oliveras-Salas*, 884 F.2d at 1534; *Vieques Air Link*, 892 F.2d at 1126. The Plazo Decenal is a jurisdictional period, that is, the claim does not exist in the eyes of the law once the ten years have passed. "[A] court of law has no flexibility to hear such time-barred claims." *In re San Juan Dupont Plaza*, 687 F.Supp. at 729.

In applying the "Plazo Decenal", it is clear that Plaintiffs claims must be dismissed. The installation of the tank occurred in 1971; the alleged maintenance and repair occurred between 1975–1976; the accident occurred in 1986; and plaintiffs filed their suit in Sept. of 1990, 19 years after the completion of the tank and 14 years after the alleged repairs.

The remaining alleged errors cited by plaintiff are unfounded and meritless because they depend in one way or another on arguments that this court has determined herein erroneous. As Magistrate Judge properly concluded all claims as to De Dietrich and Daniels are therefore time barred, except the claims against Daniels based on maintenance and supervision performed by Daniels on the tank until 1986 immediately prior to the explosion of the tank.

## VI. CONCLUSION

After a careful review of all pertinent submissions on file, the documents attached, the Magistrate Judge's Report and Recommendation and the objections thereto, this court affirms in toto the Report and Recommendation of the Magistrate Judge.

WHEREFORE, the court hereby approves and adopts the magistrate's report and recommendation.

The case is set for status conference/settlement/ trial setting for February 25, 1999 at 4:30pm, the parties are to expect a trial setting prior to March 31, 1999.

IT IS SO ORDERED.